**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000972
10-NOV-2015
08:33 AM**

NO. CAAP-14-0000972

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ACE QUALITY FARM PRODUCTS, LLC, a Hawai'i Limited
Liability Company; WESTERN SALES TRADING COMPANY,
INC., a Guam corporation, Plaintiffs-Appellees,
v.
ERIC HAHN dba AQUARIUS ENDEAVORS, Defendant-Appellant,
and
7D FOOD INTERNATIONAL, INC., a Philippine
corporation, Defendant-Appellee,
and
JOHN DOES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-0351)


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Fujise and Reifurth, JJ.)

Defendant-Appellant *pro se* Eric Hahn, dba Aquarius Endeavors (**Hahn**), appeals from the following entered in the Circuit Court of the First Circuit[1] (**circuit court**):

(1) "Order Denying [Hahn's] Motion to Vacate and Set Aside Jury Verdict Filed February 21, 2013," entered September 9, 2013;

(2) "Order Granting In Part and Denying In Part Plaintiffs' Motion for Award of Treble Damages and Attorneys [sic] Fees and Costs under Hawaii Revised Statutes Sections 480-2 and 480-13 Filed November 2, 2012," entered September 6, 2013;

(3) "Final Judgment," entered September 12, 2013; and

---

[1] The Honorable Edwin C. Nacino presided.

(4) "Amended Final Judgment," entered June 17, 2014.

Plaintiffs-Appellees Ace Quality Farm Products, LLC, a Hawaii Limited Liability Company (**Ace**) and Western Sales Trading Company, Inc. (**WSTCO**), a Guam corporation (together, **Appellees**) brought suit against Hahn, and Defendant-Appellee 7D Food International, Inc. (**7D**), a Philippine corporation, for various business tort claims.

On appeal, Hahn contends the circuit court erred by:

(1) enforcing its "Order Granting [Appellees'] Motion for Sanctions for [Hahn's] Spoliation of Evidence Filed on May 17, 2011" (**Spoliation Order**) at trial and issuing a spoliation instruction to the jury;

(2) discharging Juror Matthew Zitello (**Juror Zitello**);

(3) denying his February 21 , 2013 "Motion to Vacate and Set Aside Jury Verdict" (**Motion to Vacate**);

(4) trebling damages against him;

(5) finding sufficient evidence to sustain a verdict against him; and

(6) failing to advise the jury of a prior entry of default judgment against 7D.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Hahn's appeal is without merit.

I.  Spoliation Order

A.  Spoliation of Evidence

Hahn contends that "[t]he trial court erred in sanctioning [him] for the destruction of emails by instructing the jury they must presume [he] tortiously interfered with the contract between WSTCO and 7D, and interfered with prospective economic advantages." Hahn claims that "unlike a few jurisdictions, Hawaiʻi has not recognized the tort of spoliation of evidence." We disagree.

The Hawaiʻi Supreme Court "recognize[s] that the circuit court has wide-ranging authority to impose sanctions for the spoliation of evidence." Stender v. Vincent, 92 Hawaiʻi 355,

2

362, 992 P.2d 50, 57 (2000). The supreme court held that the circuit court "has the inherent power to fashion a remedy to cure prejudice suffered by one party as a result of another party's loss or destruction of evidence." Id. (emphasis and ellipsis omitted) (quoting Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawaiʻi 494, 507-08, 880 P.2d 169, 182-83 (1994)). Notably, the supreme court held that the circuit court may give an adverse inference instruction as an appropriate remedy. See Stender, 92 Hawaiʻi at 362, 992 P.2d at 57 (holding that circuit court's adverse inference instruction was a type of spoliation sanction within the court's authority); see also Richardson, 76 Hawaiʻi at 508, 880 P.2d at 183 (holding that "the trial court had the inherent power to provide a remedial jury instruction addressing the loss of the original incident report if it deemed such a measure appropriate.").

### B. Rebuttable Presumption

On appeal, Hahn also claims that the spoliation sanction's adverse inference instruction, "as enforced by the court during trial," "suddenly became absolute" when the circuit court failed to permit Hahn to "tell the jury that the emails were deleted because they contained his confidential marketing information that he did not want to share with [Appellees] . . . ."

The circuit court found that Hahn destroyed relevant emails between himself and 7D. The circuit court sanctioned Hahn and indicated that it would issue an adverse inference instruction that Hahn intentionally destroyed relevant evidence. The instruction included a rebuttable presumption that the destroyed evidence supported a finding that Hahn engaged in tortious conduct. During trial, Hahn attempted to testify to the reason that he deleted the emails between himself and 7D. The circuit court instructed Hahn that he was not to explain why the documents were destroyed because "it was already addressed in the motion for sanction." The circuit court reiterated that while Hahn could provide evidence that he did not tortiously interfere with the contract between 7D and WSTCO, he could not "relitigate the [circuit court's] ruling with regards to the sanction

3

imposed." Because Hahn's testimony attempted to challenge the circuit court's award of sanctions and not rebut the presumption that he destroyed emails supporting a finding that Hahn tortiously interfered, the circuit court did not abuse its discretion in preventing Hahn's line of testimony. See Stender, 92 Hawai'i at 362, 992 P.2d at 57.

### C. Language of Adverse Inference Instruction

Hahn also challenges the language used in the circuit court's adverse inference instruction. Specifically, Hahn contends the instruction was erroneous because "it was written in the future tense, i.e., that [Hahn] had 'to bring forth proof,'" and "conveyed to the jury the distinct message that [Hahn] had not yet done so." The record indicates Hahn did not object to the language of the circuit court's adverse inference instruction, even though he was given multiple opportunities to do so. See Hawai'i Rules of Civil Procedure (**HRCP**) Rule 51(f) ("No party may assign as error the giving or the refusal to give, or the modification of, an instruction . . . unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."). The Hawai'i Supreme Court has held, however, that "even the complete failure to object to a jury instruction does not prevent an appellate court from taking cognizance of the trial court's error if the error is plain and may result in a miscarriage of justice." Montalvo v. Lapez, 77 Hawai'i 282, 288, 884 P.2d 345, 351 (1994) (citation and internal quotation marks omitted). We fail to see how the tense of the court's instruction could have "confused" or "baffled" the jury, as Hahn suggests, so as to constitute plain error. Therefore, we deem Hahn's objection to the instruction waived. See HRCP Rule 51(f).

## II. Dismissal of Juror

Hahn contends the circuit court erred when it dismissed Juror Zitello for texting during trial because "[t]he texting allegation did not warrant the ultimate sanction of [Juror Zitello's] discharge from the panel."

4

HRCP Rule 47(e) provides that "[t]he court may for good cause excuse a juror from service during trial or deliberation." The Hawai'i Supreme Court, in Doe v. Doe, 98 Hawai'i 144, 44 P.3d 1085 (2002) noted that

> [t]he term "good cause" has been defined to mean "a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." Black's Law Dictionary [at 692]. "Good cause" also "depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which [the] decision is committed."

Doe, 98 Hawai'i at 154, 44 P.3d at 1095 (quoting Miller v. Tanaka, 80 Hawai'i 358, 910 P.2d 129, reconsideration granted, 80 Hawai'i 358, 910 P.2d 129, reconsideration denied, 80 Hawai'i 358, 910 P.2d 129 (App. 1995), cert. denied, 80 Hawai'i 357, 910 P.2d 128 (1996)). The supreme court opined that "[a]s a general rule, 'good cause' means a substantial reason; one that affords a legal excuse[.]" Doe, 98 Hawai'i at 154, 44 P.3d at 1095 (quoting State v. Estencion, 63 Haw. 264, 267, 625 P.2d 1040, 1042–43 (1981)). The supreme court ultimately held that "'good cause' is a relative and highly abstract term, and its meaning must be determined not only by verbal context of the statute in which the term is employed, but also by context of action and procedures involved in the type of case presented." Doe, 98 Hawai'i at 154, 44 P.3d at 1095 (brackets omitted).

Here Juror Zitello was dismissed for texting on his cell phone during trial after being instructed not to do so. Hahn contends that "the dismissal of [Juror Zitello] in these circumstances was an obvious ploy by [Appellees] to get rid of an obstacle to their obtaining an award against [Hahn], and constituted a clear abuse of discretion by the trial court." A review of the record, however, indicates that the circuit court expressed its inclination to dismiss Juror Zitello before asking the parties to share their positions on the matter. The circuit court found that Juror Zitello's actions were "in direct contravention to what the [circuit court] had ordered all the jurors" and that, "albeit Mr. Zitello did say he did it when you were up there on the bench conference[,] that is still not justification for him to disregard the [circuit court's] order earlier . . . ." Given the context of the situation, the circuit

5

court did not abuse its discretion in finding that there was good cause to dismiss Juror Zitello. <u>See</u> <u>Doe</u>, 98 Hawaiʻi at 154, 44 P.3d at 1095.

**III. Motion to Vacate**

Hahn contends the circuit court erred in denying his Motion to Vacate because he had a right to a non-jury trial. In his motion, Hahn sought "a vacatur to remedy the grave injustice and illegality that occurred by improperly submitting this case for a jury trial."

HRCP Rule 39(c) provides:

**Rule 39.    TRIAL BY JURY OR BY THE COURT.**

. . . .

**(c) Advisory Jury and Trial by Consent.** In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury. <u>The court, with the consent of the parties, may order a trial with a jury whose verdict shall have the same effect as if trial by jury had been a matter of right.</u>

(Emphasis added.)

On November 3, 2010, Hahn's attorney signed the "Trial Setting Status Conference Order of - November 3, 2010," in which all parties consented to a jury trial. At no time before or during the trial did Hahn object to proceeding to trial by jury. Hahn only objected to proceeding via jury trial after the jury returned with an unfavorable verdict against him. Given that Hahn agreed to proceed via jury trial and failed at any time to request that his request be withdrawn, Hahn waived any objection. <u>See</u> <u>Cnty. of Hawaii v. C & J Coupe Family Ltd. P'ship</u>, 119 Hawaiʻi 352, 373, 198 P.3d 615, 636 (2008) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." (citation and internal quotation marks omitted)). Therefore, the circuit court did not abuse its discretion when it denied Hahn's Motion to Vacate.

**IV. Treble Damages**

**A. Proximate Causation**

Hahn contends the circuit court erred in trebling the jury verdict because the jury did not "make a specific finding of which damages were separately proximately caused by the unfair

6

methods of competition."  Hahn appears to contend that because the jury did not specifically find that WSTCO's $200,000 worth of damages were proximately caused by Hahn's unfair methods of competition, the circuit court could not treble WSTCO's damages.

Like an award of punitive damages, treble damages, as provided under Hawaii Revised Statutes (**HRS**) § 480-13(b) (2008 Repl.), are a form of deterrence.  <u>Han v. Yang</u>, 84 Hawaiʻi 162, 177, 931 P.2d 604, 619 (App. 1997) ("Treble damages are a form of deterrence and hence serve a purpose similar to punitive damages.").  HRS § 480-13(b) provides:

> **§480-13  Suits by persons injured; amount of recovery, injunctions. . . . .**
>
> (b)    Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
>
> > (1)    May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, <u>the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater</u>, and reasonable attorney's fees together with the costs of suit[.]

(Emphasis added.)  HRS § 480-2(a) (2008 Repl.) states in relevant part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."[2]  This court has maintained that HRS § 480-2[3] "outlaws unfair methods of competition and unfair or

---

[2]    "Any person may bring an action based on unfair methods of competition declared unlawful by [HRS § 480-2]."  HRS § 480-2(e).

[3]    HRS § 480-2 provides:

> **§ 480-2  Unfair competition, practices, declared unlawful.**  (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
>
> (b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.
>
> (c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.

(continued...)

7

deceptive trade practices in sweeping terms." Han, 84 Hawai'i at 177, 931 P.2d at 619 (App. 1997) (quoting Island Tobacco Co. v. R.J. Reynolds Tobacco Co., 63 Haw. 289, 300, 627 P.2d 260, 268 (1981)). HRS § 480-2 does not define "unfair methods of competition," but in general the statute "was constructed in broad language in order to constitute a flexible tool to stop and prevent . . . fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen and businesswomen." Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 255 n.34, 982 P.2d 853, 884 n.34 (1999), superseded by statute on other grounds as stated in Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 228 P.3d 303 (2010); see Han, 84 Hawai'i at 177, 931 P.2d at 619; see also Kapunakea Partners v. Equilon Enters. LLC, 679 F. Supp. 2d 1203, 1209 (D. Haw. 2009).

"Whether competition is unfair or not generally depends upon the surrounding circumstances of the particular case. What is harmful under certain circumstances may be beneficial under different circumstances." Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Hawai'i 77, 109, 148 P.3d 1179, 1211 (2006) (format altered); see Kapunakea Partners, 679 F. Supp. 2d at 1209. In general, "competitive conduct 'is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Robert's Hawaii Sch. Bus, 91 Hawai'i at 255 n.34, 982 P.2d at 884 n.34 (quoting State ex rel. Bronster v. United States Steel Corp., 82 Hawai'i 32, 51, 919 P.2d 294, 313 (1996)); see Kapunakea Partners, 679 F. Supp. 2d at 1209.

Appellee's Second Amended Complaint alleged that Hahn engaged in tortious interference with contractual relations between WSTCO and 7D, tortious interference with contractual

---

³(...continued)
        (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.

        (e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

relations between WSTCO and Ace, tortious interference with prospective economic advantage as to WSTCO and 7D, tortious interference with prospective economic advantage as to WSTCO and Ace, unfair competition under HRS § 480-2, and deceptive trade practice under HRS § 481A-3 (2008 Repl.). The Second Amended Complaint did not allege new facts or conduct in support of Appellees' unfair competition claim. Instead, the complaint alleged:

<u>COUNT VIII - UNFAIR COMPETITION UNDER</u>
<u>HAWAII REVISED STATUTES SECTION 480-2</u>
(HAHN)

60. Plaintiffs repeat and herein incorporate by reference the allegations contained in Paragraphs 1 through 59 above.

61. The actions of HAHN described herein constitute unfair methods of competition prohibited by Hawaii Revised Statutes Section 480-2.

62. As the direct result of said unfair method of competition, Plaintiffs suffered damages in amounts to be proved at trial.

Thus, the facts that constituted Appellees' tortious interference claims also constituted the basis of Appellees' unfair competition claim against Hahn. Appellees' complaint is consistent with their theory of the case, as expounded upon during Appellees' closing remarks. In essence, Appellees argued during closing arguments that Hahn engaged in unfair competition when he tortiously interfered with contractual and business relations. The jury found, *inter alia*, that Hahn tortiously interfered with a contract between WSTCO and 7D, tortiously interfered with a business relationship between WSTCO and 7D, and engaged in unfair methods of competition against WSTCO. The jury found that WSTCO suffered $200,000 in damages "as a result of [Hahn's] conduct."

Based on our reading of the Appellees' pleadings, the trial proceedings, and the jury's special verdict form, WSTCO successfully proved the elements necessary to treble its damages, pursuant to HRS § 480-13(b)(1). "The elements necessary to recover on an unfair or deceptive trade acts or practices claim under HRS § 480-13(b)(1) are: (1) a violation of HRS § 480-2; (2) injury to the consumer caused by such a violation; and (3) proof

of the amount of damages." Davis v. Wholesale Motors, Inc., 86 Hawaiʻi 405, 417, 949 P.2d 1026, 1038 (App. 1997). Here, (1) the jury found that Hahn violated HRS § 480-2 by engaging in unfair methods of competition; (2) WSTCO sustained an injury i.e., a breached contract, that was the result of Hahn's tortious interference with a contract, and an impaired business relationship, that was the result of Hahn's tortious interference with a business relation); and (3) WSTCO suffered damages totaling $200,000 as a result of its injury. See id. Thus, pursuant to HRS § 480-13(b)(1), the circuit court was required to award WSTCO treble damages. See HRS § 480-13(b)(1); see also Han, 84 Hawaiʻi at 177, 931 P.2d at 619 (trial court trebled compensatory damages awarded to plaintiff after jury found that defendant had engaged in unfair or deceptive practices). The circuit court, therefore, did not err in trebling WSTCO's damages, pursuant to HRS § 480-13(b)(1).

Hahn also claims that "[t]he same problem exists with respect to the verdict as awarded in favor of Ace." However, unlike the jury's verdict as to Hahn's conduct against WSTCO, the jury only found Hahn liable for unfair methods of competition against Ace. As a direct result of Hahn's unfair competition, the jury awarded Ace $381,000 in damages. Thus, Ace's award does not raise the same factual questions as WSTCO's award and the circuit court did not err in trebling Ace's damages.

**B.  Specific Pleading**

Hahn alleges that "[t]he trial court also erred in awarding [Appellees] treble damages because they never alleged these damages in the pleadings or even during trial." In essence, Hahn alleges that treble damages must be specifically pled in a complaint. However, no such pleading was required for Appellees to recover treble damages.

"Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests." In re Genesys Data Technologies, Inc., 95 Hawaiʻi 33, 41, 18 P.3d 895, 903

(2001); see HRCP Rule 8(a).[4]  Furthermore, HRCP Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." See In re Genesys Data Technologies, Inc., 95 Hawai'i at 41, 18 P.3d at 903 ("Pleadings must be construed liberally.").

Like general damages and unlike special damages, there is no requirement that statutorily awarded treble damages be specifically pled in a plaintiff's complaint. See cf. HRCP Rule 9(g) (providing that "[w]hen items of special damage are claimed, they shall be specifically stated."). "[S]pecial damages are those damages which are of a relatively unusual kind and which, without specific notice to the adversary, may not be understood to be part of the claim." Ellis v. Crockett, 51 Haw. 45, 51, 451 P.2d 814, 819 (1969).  Conversely, "general damages are those damages which usually accompany the kind of wrongdoing alleged in the complaint so that the mere allegation of the wrong gives sufficient notice to the opposite party of the kind of damage that will be claimed at trial[.]" Id.; see 22 Am. Jur. 2d Damages § 644 (2015) ("[G]eneral damages need not be pleaded with specificity because the opposing party is on notice as a matter of law that general damages arise from the nature of the injury alleged.").

A request for treble damages, pursuant to HRS § 480-13(b)(1), is more like a request for general damages than a request for special damages.  HRS § 480-13(b)(1) statutorily provides that a plaintiff injured by conduct declared unlawful by HRS § 480-2 may sue for damages and "shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater," if judgment is for plaintiff. (Emphasis added.)  Therefore, like general damages, Appellees'

---

[4]     HRCP Rule 8(a) provides:

**Rule 8.   General Rules of Pleading.**

    **(a) Claims for Relief.**  A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

allegation that Hahn engaged in unfair methods of competition, pursuant to HRS § 480-2, gave Hahn sufficient notice that, as a matter of law, Appellees were entitled to treble damages if successful on their HRS § 480-2 claim. Therefore, Appellees did not have to specifically plead treble damages in their Second Amended Complaint.

## V. Sufficiency of Evidence

Hahn contends there was insufficient evidence to support a claim of tortious interference with a contract or tortious interference with a business relationship because Appellees failed to show that Hahn had the requisite intent.

The elements of tortious interference with contractual relations include:

> (1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff. It is of the essence in an action for wrongful interference with contractual relationships that the plaintiff suffer damages as a consequence of the defendant's conduct, and these damages cannot be speculative or conjectural losses.

Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawai'i 35, 44, 122 P.3d 1133, 1142 (App. 2005) (emphasis in original, ellipsis and brackets omitted) (quoting Weinberg v. Mauch, 78 Hawai'i 40, 50, 890 P.2d 277, 287 (1995)).

The elements of tortious interference with a prospective business advantage include:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

Meridian Mortg., Inc. at 47-48, 122 P.3d at 1145-46 (emphasis added) (quoting Robert's Hawaii Sch. Bus, Inc., 91 Hawai'i at 258, 982 P.2d at 887). Thus, both torts require a showing that a defendant intended to induce the third party to breach a contract or intended to interfere with the relationship, advantage, or expectancy.

> In order to establish a cause of action against a third party for intentional interference with a contractual right, it must be shown that the third party acted with intent and legal malice, i.e., the intentional doing of a harmful act without legal or social justification or excuse, or, in order words, the wilful violation of a known right.

See Meridian Mortg. Inc., 109 Hawai'i at 45-46, 122 P.3d at 1143-44 (emphasis omitted) (quoting Chow v. Alston, 2 Haw. App. 480, 484, 634 P.2d 430, 434 (1981)).

Hahn's testimony at trial indicated such an intent. Hahn testified that 7D had an exclusive business relationship with WSTCO for the distribution of 7D's dried mangoes in Hawai'i and that the relationship was, at the least, based upon a verbal contract between 7D and WSTCO. In spite of 7D's exclusive relationship with WSTCO, Hahn approached 7D with the intention of inducing 7D to end its exclusive business relationship with WSTCO so that Hahn could get the 7D distribution contract, in contravention of WSTCO's contract with 7D. Hahn testified that once 7D agreed to do business with him, he helped to draft the letter that terminated 7D's exclusive relationship and contract with WSTCO. Based on the evidence in the record, there was substantial evidence to support a finding that Hahn intended to induce 7D to breach a contract with WSTCO and intended to interfere with WSTCO's business relationship with 7D. See In re Estate of Herbert, 90 Hawai'i 443, 454, 979 P.2d 39, 50 (1999). Therefore, there was sufficient evidence to sustain the jury's finding that Hahn tortiously interfered with the contract and tortiously interfered with the business relationship between 7D and WSTCO.

## VI. 7D's Default Judgment

### A. Jury Instruction

Hahn argues the circuit court erred by not telling the jury that WTSCO had been awarded a judgment against 7D for its breach of contract with WSTCO. Hahn claims that "[b]y not informing the jury of the judgment against 7D, the jury was left with the false impression that WSTCO must recover its damages resulting from the breach [of contract], if at all, only from [Hahn]." (Emphasis omitted.) Hahn also argues that "the jury also should have been informed that WSTCO's damage formulation

[sic] and analysis against 7D for simple breach of contract and its damage formulation and analysis against [Hahn] for tortious interference and unfair competition were exactly the same." (Emphasis omitted.) Hahn claims that without the formulation and analysis, "the jury was left with the false impression that [Hahn's] alleged conduct was more egregious and damaging than that of 7D."

Hahn provides no legal support for his contention that the circuit court should have told the jury about WTSCO's judgment against 7D and no factual support for his contention that the jury had a false impression. Furthermore, Hahn's opening brief provides no citation to the record that would indicate that he requested such an instruction on the matter. See HRCP Rule 51(f). Indeed, the record indicates that at the time the jury entered its verdict against Hahn, the circuit court had not yet entered its default judgment against 7D.[5] Because Hahn provided no discernible argument in support of his contention, we deem his challenge waived. See Norton v. Admin. Dir. of Court, State of Hawai'i, 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995); see also Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

### B. Double Recovery

Hahn argues that "WSTCO's judgment against [him] constitutes an illegal double recovery." In general, "[a] plaintiff may not receive a double recovery for the same injuries or losses arising from the same conduct or wrong. Thus, a double or duplicative recovery for a single injury is invalid." 22 Am. Jur. 2d Damages, § 32 (2015) (footnote omitted); see e.g. Cieri v. Leticia Query Realty, Inc., 80 Hawai'i 54, 69, 905 P.2d 29, 44 (1995) ("[A]n award of both treble damages and punitive damages for the same act constitute improper double recovery." ( quoting Eastern Star, Inc., S.A. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 141, 712 P.2d 1148, 1159 (1985))). "To prove a double recovery, a defendant must demonstrate an overlap between: (1)

---

[5] The jury entered its verdict against Hahn on April 5, 2012. The circuit court granted-in-part and denied-in-part Appellee's motion for default judgment against 7D on June 8, 2012.

14

the injuries or damages for which a plaintiff has received compensation; and (2) the injuries or damages that are the subject of a plaintiff's claim against the defendant." 22 Am. Jur. 2d Damages § 32 (2015) (quoting Moore Auto. Grp., Inc. v. Lewis, 362 S.W.3d 462, 468 (Mo. Ct. App. 2012)).

Here, WSTCO's recovery of damages from 7D did not overlap with its recovery of damages from Hahn. Appellees sought recovery of damages against 7D for (1) breaching a contract with Ace; (2) tortiously interfering with contractual relations between WSTCO and Ace; and (3) tortiously interfering with prospective economic advantage between WSTCO and Ace. The circuit court granted-in-part and denied-in-part default judgment against 7D after 7D failed to respond to Appellee's Second Amended Complaint. WSTCO was awarded damages against 7D in the amount of $446,355.[6]

WSTCO was awarded damages from Hahn in the amount of $200,000 after the jury found that he had (1) tortiously interfered with contractual relationship between 7D and WSTCO; (2) tortiously interfered with the business relationship between 7D and WSTCO; and (3) engaged in unfair methods of competition.

WSTCO's recovery against 7D pertained to 7D's breach of contract with WSTCO and 7D's tortious interference between WSTCO and Ace. On the other hand, WSTCO's recovery against Hahn related to Hahn's unfair methods of competition and Hahn's tortious interference between WSTCO and 7D. Consequently, WSTCO did not receive double recovery from Hahn and 7D. See Moore Auto. Grp., 362 S.W.3d at 468.

Therefore,

IT IS HEREBY ORDERED that the following entered in the Circuit Court of the First Circuit are affirmed:

(1) "Order Denying Defendant Eric Hahn's Motion to Vacate and Set Aside Jury Verdict Filed February 21, 2013," entered September 9, 2013;

(2) "Order Granting In Part and Denying In Part Plaintiffs' Motion for Award of Treble Damages and Attorneys'

---

[6] Ace was not awarded any damages against 7D.

Fees and Costs under Hawaii Revised Statutes Sections 480-2 and 480-13 Filed November 2, 2012," entered September 6, 2013;

      (3) "Final Judgment," entered September 12, 2013; and

      (4) "Amended Final Judgment," entered June 17, 2014.

      DATED: Honolulu, Hawai'i, November 10, 2015.

On the briefs:

Eric Hahn
Defendant-Appellant pro se.

Cynthia A. Farias
Mark S. Hamilton
(Frame & Nakano)
for Plaintiffs-Appellees.

Presiding Judge

Associate Judge

Associate Judge